# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SELMA DIVISION

| | |
|---|---|
| **CRAIG PLOWMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) |
| **DRAX d/b/a ALABAMA PELLETS, LLC,** | ) |
| | ) JURY TRIAL DEMANDED |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

### STATEMENT OF JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority. This is a suit authorized and instituted pursuant to 42 U.S.C. § 2000e, et seq, known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); and 42 U.S.C. § 1981.

2. This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction, pursuant to 28 U.S.C. § 1343(a); as this civil action seeks to secure the protection of, and redress the deprivation of, rights secured by Title VII and § 1981, providing for injunctive and other relief against discrimination and retaliation.

3. Venue is proper in this district, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in Marengo County located in this judicial district.

4. Plaintiff has fulfilled all conditions precedent to the institution of this action, as required under Title VII.

## STATEMENT OF THE PARTIES

5. Plaintiff Craig Plowman (hereinafter referred to as "Plaintiff" or "Plowman") is a Caucasian male over the age of nineteen (19) years. He is a resident of the State of Alabama. At all times relevant to this Complaint, Plaintiff was an employee of the named defendant.

6. Defendant Drax d/b/a Alabama Pellets, LLC (hereinafter "Defendant" or "Drax") is an entity subject to suit under Title VII and 42 U.S.C. Section 1981. At all times relevant herein, Defendant was Plaintiff's employer.

## STATEMENT OF THE FACTS

7. Plaintiff is a Caucasian male.

8. Plaintiff began working at Drax in or near October, 2013 as an "Area Manager." In this role, Plaintiff's responsibilities included hiring employees. For the majority of his employment, Plaintiff enjoyed a productive and healthy work environment. However, that all changed when Rick Zimmerman ("Zimmerman") came on board as general manager, in or near September, 2022.

9. Throughout his experience working under Zimmerman, Plaintiff always noticed that Zimmerman would treat African-American employees less favorably than their white counterparts. More specifically, Zimmerman would try to hire more white employees to replace African-American employees. Additionally, Zimmerman would scrutinize and micromanage African-American employees, while being very lenient towards white employees.

10. Sadly, Plaintiff noticed that Zimmerman's disparate treatment did not stop there. Indeed, Plaintiff also witnessed Zimmerman treating female employees (especially African-American female employees) less favorably than the male employees, including subjecting them to unwanted comments, touching, and even go so far as to stalk them around the plant. Because

Plaintiff had hired these female employees, they would all report Zimmerman's discriminatory behavior to Plaintiff.

11. As was Plaintiff's obligation, he promptly reported the complaints about Zimmerman's racist and sexist behavior to Human Resources ("HR"). Following Plaintiff's reports, he noticed he was being isolated and excluded by Zimmerman, which had not occurred prior to his complaints. Because this isolation and exclusion was placing him at a disadvantage, Plaintiff felt that he now had a target on his back due to engaging in protected activity. The last time Plaintiff reported Zimmerman to HR was in or near mid-October, 2022.

12. Shortly after Plaintiff made his last complaint to HR, Zimmerman came to him and inquired if an African-American female employee (one whom he had been harassing against her will) was having sex with a particular male employee. Plaintiff immediately communicated to Zimmerman that he would not participate in helping Zimmerman continue to target African-American employees and that he would have to raise this purported issue with HR. Almost immediately after that exchange, Zimmerman terminated Plaintiff.

13. The reason cited for Plaintiff's termination was "violation of company policies," however this was pretext. Indeed, Plaintiff's similarly situated counterparts (who did not complain about discrimination) who had engaged in the same alleged behavior were not disciplined, much less terminated. The fact is the real reason for terminating Plaintiff was simply because he was performing the managerial duties all companies need: he reported what he believed was illegal racial and sexual discrimination. In other words, because Plaintiff stood up for the rights of other employees and opposed such discriminatory actions and comments, Defendant fired him.

**FIRST CAUSE OF ACTION**
**Disparate Treatment Based on Opposing Race Discrimination**
**under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981**

14. Plaintiff re-alleges and incorporates by reference paragraphs nos. 7-13 with the same force and effect as if fully set forth herein and further states as follows:

15. Plaintiff was made aware that Zimmerman would treat African-American employees less favorably than their white counterparts. More specifically, Zimmerman would try to hire more white employees to replace African-American employees. Additionally, Zimmerman would scrutinize and micromanage African-American employees, while being very lenient towards white employees.

16. Upon finding this out, Plaintiff, having a good faith and reasonable belief that the actions were discriminatory, promptly engaged in protective activity by submitting HR complaints opposing the behavior. However, not only was no corrective action taken, but Zimmerman himself fired Plaintiff for a meritless reason—almost immediately after the last time Plaintiff had complained to HR about him.

17. The reason cited for Plaintiff's termination was "violation of company policies," however this was pretext. Indeed, Plaintiff's similarly situated counterparts (who did not complain about discrimination) who had engaged in the same alleged behavior were not disciplined, much less terminated. The real reason was that Plaintiff opposed discrimination—moreover, the same individual who he had complained about was who terminated Plaintiff.

18. Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII and Section 1981.

19. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of

employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## SECOND CAUSE OF ACTION
### Retaliation Based on Opposing Race Discrimination
### under 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981

20.   Plaintiff re-alleges and incorporates by reference paragraph nos. 7-13 with the same force and effect as if fully set forth herein and further states as follows:

21.   Plaintiff was made aware that Zimmerman would treat African-American employees less favorably than their white counterparts. More specifically, Zimmerman would try to hire more white employees to replace African-American employees. Additionally, Zimmerman would scrutinize and micromanage African-American employees, while being very lenient towards white employees.

22.   Upon finding this out, Plaintiff promptly engaged in protective activity by submitting HR complaints. However, not only was no corrective action taken, but Plaintiff noticed that he was being isolated and excluded from management meetings, which had not occurred prior to his complaint. Because this isolation and exclusion was placing him at a disadvantage, Plaintiff felt that he now had a target on his back due to engaging in protected activity.

23.   Sadly, Plaintiff's concern came to fruition when Zimmerman himself fired Plaintiff for a meritless reason—almost immediately after the last time Plaintiff had complained to HR about him. The reason cited for Plaintiff's termination was "violation of company policies," however this was pretext. Indeed, Plaintiff's similarly situated counterparts (who did not complain about discrimination) who had engaged in the same alleged behavior were not disciplined, much less terminated. Notably, Plaintiff was fired by the same individual who Plaintiff had complained about.

24. Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII and Section 1981.

25. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

### THIRD CAUSE OF ACTION
### Disparate Treatment Based on Opposing Gender Discrimination/Sexual Harassment under 42 U.S.C. § 2000e, et seq.

26. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-13 with the same force and effect as if fully set forth herein and further states as follows:

27. Plaintiff noticed that Zimmerman's disparate treatment did not stop at racism. Indeed, Plaintiff also witnessed Zimmerman treating female employees (especially African-American female employees) less favorably than the male employees, including subjecting them to unwanted comments, touching, and even go so far as to stalk them around the plant. Because Plaintiff had hired these female employees, they would all report Zimmerman's discriminatory behavior to Plaintiff.

28. Having a good faith reasonable belief that these female employees were treated this way due to their gender, and not wanting Drax to continue to be a place permeated with discriminatory practices, Plaintiff made additional complaints to HR about this incident.

29. Unfortunately, rather than commend him for bringing HR's attention to such inappropriate behavior, Plaintiff was terminated for a meritless reason almost immediately following the final time he opposed discrimination. The reason cited for Plaintiff's termination was "violation of company policies," however this was pretext. Indeed, Plaintiff's similarly

6

situated counterparts (who did not complain about discrimination) who had engaged in the same alleged behavior were not disciplined, much less terminated. The real reason was that Plaintiff opposed discrimination—moreover, the same individual who he had complained about was who terminated Plaintiff.

30. Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII.

31. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

### FOURTH CAUSE OF ACTION
### Retaliation Based on Opposing Gender Discrimination/Sexual Harassment under 42 U.S.C. § 2000e, et seq.

32. Plaintiff re-alleges and incorporates by reference paragraph nos. 7-13 with the same force and effect as if fully set forth herein and further states as follows:

33. Plaintiff noticed that Zimmerman's disparate treatment did not stop at racism. Indeed, Plaintiff also witnessed Zimmerman treating female employees (especially African-American female employees) less favorably than the male employees, including subjecting them to unwanted comments, touching, and even go so far as to stalk them around the plant. Because Plaintiff had hired these female employees, they would all report Zimmerman's discriminatory behavior to Plaintiff.

34. Having a good faith reasonable belief that these female employees were treated this way due to their gender, and not wanting Drax to continue to be a place permeated with discriminatory practices, Plaintiff made additional complaints to HR about this incident.

35. Unfortunately, rather than commend him for bringing HR's attention to such inappropriate behavior, Plaintiff noticed that he was being isolated and excluded from management meetings, which had not occurred prior to his complaints. Because this isolation and exclusion was placing him at a disadvantage, Plaintiff felt that he now had a target on his back due to engaging in protected activity.

36. Sadly, Plaintiff's concern came to fruition when Zimmerman himself fired Plaintiff for a meritless reason—almost immediately after the last time Plaintiff had complained to HR about him. The reason cited for Plaintiff's termination was "violation of company policies," however this was pretext. Indeed, Plaintiff's similarly situated counterparts (who did not complain about discrimination) who had engaged in the same alleged behavior were not disciplined, much less terminated. Notably, Plaintiff was fired by the same individual who Plaintiff had complained about.

37. Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII.

38. As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the retaliation by Defendant are violative of the rights of Plaintiff

as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981.

2. Grant Plaintiff a permanent injunction enjoining Defendant, its respective agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1991, and 42 U.S.C. § 1981.

3. Enter an Order requiring Defendant to make Plaintiff whole by awarding Plaintiff back pay (plus interest), reinstatement or front pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this litigation.

5. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief, is the only means of securing adequate relief.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

*/s/Nicki Lawsen*
Samuel Fisher
Sidney Jackson
Nicki Lawsen
*Attorneys for the Plaintiff*
**Wiggins, Childs, Pantazis, Fisher
& Goldfarb, LLC**

The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
sf@wigginschilds.com
sjackson@wigginschilds.com
nlawsen@wigginschilds.com